UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CATHERINE RIASCOS-HURTADO and
GLADYS SANCHEZ-LOQUI,

                Plaintiffs,                                   **MEMORANDUM & ORDER**

               - against -                                   09 CV 003 (RJD) (VMS)

UNITED STATES OF AMERICA, *et al.*,

                Defendants.
------------------------------------------------------------ x

DEARIE, District Judge

      Plaintiffs Catherine Riascos-Hurtado and Gladys Sanchez-Loqui, inmates at the Metropolitan Detention Center ("MDC") in Brooklyn, were sexually assaulted by Theodore Raines, a correctional counselor at the MDC. Raines threatened plaintiffs with punishment, including solitary confinement, if they reported his acts. After Raines's crimes were eventually uncovered, he was prosecuted by the United States and convicted of sexual abuse of a ward in violation of 18 U.S.C. §§ 2243(b), 2246(2)(A). Plaintiffs assert claims against Raines for Eighth Amendment violations and against the United States for battery and negligent screening, hiring, training, supervision, evaluation, and retention of Raines. Raines failed to appear in this action and default was entered.[1] After a lengthy period of discovery, the United States moves to dismiss this action for lack of subject matter jurisdiction on the grounds that Federal Tort Claims Act ("FTCA") does not waive the sovereign immunity of the United States for the claims brought by plaintiffs. For the reasons set forth below, the motion is granted in part.

---

[1] The United States does not represent Raines on any claims asserted against him in his individual capacity.

## BACKGROUND

The following narrative, drawn from the parties' Rule 56.1 statements and the exhibits proffered in support of those statements, sets forth the relevant background. Most of the facts are not in dispute; where disputes of fact do exist, they are so noted.

Defendant Raines was employed by the Federal Bureau of Prisons ("BOP") from 1988 until he resigned on October 13, 2007. From 2005 until his resignation, Raines worked as a correctional counselor at the MDC. Plaintiffs were inmates incarcerated at the MDC while Raines was a correctional counselor.

In July 2007, Raines began making sexually suggestive comments and having physical contact with Riascos-Hurtado. He repeatedly touched her hands and buttocks. Riascos-Hurtado tried to resist these advances, but Raines threatened her with disciplinary action if she resisted. As time passed, Raines's misconduct escalated. On one occasion, he instructed Riascos-Hurtado to unbutton her clothing and then he molested her genitals. Raines again threatened Riascos-Hurtado with solitary confinement if she reported him. A week later, Raines exposed his genitals to Riascos-Hurtado and again warned her not to tell anyone.

According to Riascos-Hurtado, however, she did report Raines. Before Raines molested Riascos-Hurtado, another correctional officer, Wayne Puzie, asked her why Raines was acting strangely toward her. Riascos-Hurtado explained to Officer Puzie what Raines had been doing. Riascos-Hurtado testified at her deposition that after Raines molested her and again after he exposed himself to her, she told Officer Puzie. Riascos-Hurtado claims that Officer Puzie told her not to tell anyone because he did not want to be involved. Officer Puzie either cannot recall these conversations or states that they did not take place.

On September 16, 2007, a week after Raines exposed himself to Riascos-Hurtado—after her report to Officer Puzie—Raines raped Riascos-Hurtado. Riascos-Hurtado testified at her deposition that she told Officer Puzie about the rape. Raines raped Riascos-Hurtado a second time on October 7, 2007. On both occasions he was drunk and threatened her with solitary confinement if she reported him.

Around the same time, in July or August of 2007, Raines began making sexual comments toward Sanchez-Loqui and started touching her breasts and buttocks. On approximately eight occasions—in Sanchez-Loqui's bed, Raines's office, and at other locations in the MDC—Raines groped her. One day, Raines was openly "throwing kisses" at Sanchez-Loqui, so she reported him to Charles Neil, a correctional counselor at the MDC. Counselor Neil told Sanchez-Loqui to "keep away from that man" but did not report the incident. Raines's touching continued to escalate and in August or September 2007 he began sexually assaulting her. On one occasion, he called Sanchez-Loqui into an office, pushed her up against a file cabinet, grabbed her breasts, and then penetrated her genitals with his fingers. Raines again sexually assaulted Sanchez-Loqui in this manner on two subsequent occasions. Raines was consistently drunk when he assaulted Sanchez-Loqui.

On October 12, 2007, Sanchez-Loqui informed Counselor Neil that Riascos-Hurtado had confided to her that she (Riascos-Hurtado) and Raines had had sexual intercourse. Counselor Neil immediately interviewed Riascos-Hurtado, who confirmed that Raines had raped her. Counselor Neil then notified Warden Cameron Lindsay, who immediately referred the matter to the FBI, the BOP's Office of Internal Affairs, the BOP's Special Investigation Service, and the Office of the Inspector General. Warden Lindsay also directed that Riascos-Hurtado be immediately transferred from the MDC for her own safety. The next day, on October 13, 2007,

Raines admitted to FBI agents that he had engaged in a sex act with Riascos-Hurtado. On the afternoon of October 13th, Raines admitted to Warden Lindsay that he had sexual intercourse with Riascos-Hurtado and then resigned his position with the BOP.

Raines testified at his deposition that he voluntarily resigned from the BOP because he understood that he violated BOP policy. BOP Program Statement 3420.09 sets forth official "Standards of Employee Conduct," which plainly prohibit sexual contact between staff and inmates. Specifically, section 9(b) of the Standards of Employee Conduct (i) prohibits employees from "allow[ing] themselves to . . . become . . . sexually . . . involved with inmates," (ii) provides that "[r]egardless of whether force is used, or threatened, there is never any such thing as 'consensual' sex between staff and inmates," and (iii) indicates that employees are subject to administrative action, termination, and criminal prosecution for any inappropriate contact or relationship with inmates. Additionally, BOP Program Statement P5324.06, the Sexually Abusive Behavior Prevention and Intervention Program, provides that (i) the BOP has a "'zero tolerance' philosophy in regards to sexually abusive behavior," (ii) "[a]llegations of sexually abusive behavior [will] receive prompt intervention upon report," and (iii) "perpetrators of sexually abusive behavior will be disciplined and, when appropriate, prosecuted." Raines testified at his deposition that he was familiar with the terms of these program statements.

On September 15, 2011, a grand jury indicted Raines for two counts of sexual abuse of a ward in violation of 18 U.S.C. §§ 2243(b), 2246(2)(A), and one count of abusive sexual conduct of a ward in violation of 18 U.S.C. §§ 2244(a), 2246(3). On October 11, 2011, Raines pled guilty to the first count of the indictment and allocuted to the crime of sexual abuse of a ward. On March 19, 2014, Judge Kiyo Matsumoto sentenced Raines, *inter alia*, to 16 months imprisonment.

DISCUSSION

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Burns v. City of Utica, 590 F. App'x 44, 47 (2d Cir. 2014) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).[2] A plaintiff asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Liranzo v. United States, 690 F.3d 78, 84 (2d Cir. 2012) (citation omitted). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999). When there are disputed issues of material fact, "the district court is empowered to resolve them in the manner it sees fit." Advanced Video Technologies, LLC v. HTC Corp., No. 11-CV-6604 (CM), 2015 WL 2166182, at *4 (S.D.N.Y. Apr. 28, 2015); see also Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006) (reviewing acceptable procedures used by district courts in determining jurisdictional questions).

In considering this Court's jurisdiction, the starting place is the premise that the United States is generally immune from suit. See United States v. Bormes, 133 S. Ct. 12, 16 (2012). The FTCA "waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 217-18 (2008) (citing 28 U.S.C. § 1346(b)(1)). "Substantively, the FTCA makes the United States liable 'to the same extent as a private individual under like circumstances,' § 2674, under the law of the place where the tort occurred, § 1346(b)(1), subject to enumerated exceptions to the immunity waiver,

---

[2] While motions to dismiss pursuant to Rule 12(b)(1) are typically made earlier in litigation, "failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000); see also Fed. R. Civ. P. 12(h)(3). It is unnecessary to convert this motion to a motion for summary judgment.

5

§§ 2680(a)-(n)." Levin v. United States, 133 S. Ct. 1224, 1228 (2013). These waivers of immunity are strictly construed in favor of the government. See Liranzo, 690 F.3d at 84.

Plaintiffs plead claims for battery and negligence against the United States. The Court must decide whether the United States has waived its immunity for such claims under the FTCA.

A. Battery Claims

Plaintiffs seek to hold the United States vicariously liable for the battery Raines committed when he sexually abused them. The waiver of sovereign immunity contained in the FTCA extends only to the "negligent or wrongful act or omission of any employee of the Government while *acting within the scope of his office or employment*. . . ." 28 U.S.C. § 1346(b)(1) (emphasis added). Tortious conduct of a government employee "not acting within the scope of his office or employment, does not in itself give rise to [g]overnment liability." Sheridan v. United States, 487 U.S. 392, 401 (1988). The United States argues that Raines was not acting within the scope of his employment, and therefore the government is not liable for battery under a theory of *respondeat superior*.

Whether Raines was acting within the scope of his employment is determined by the law of New York, the place where the assault occurred. See 28 U.S.C. § 1346(b)(1); Liranzo, 690 F.3d at 86 ("the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees"). "Under New York law, although an employee's tortious acts are imputable to the employer if done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions, an employer 'is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." Swarna v. Al-Awadi, 622 F.3d 123, 144 (2d Cir. 2010) (quotations and citations omitted). To determine whether an employee was acting within the scope of his employment,

courts regularly consider: (1) the connection between the conduct and the workplace; (2) whether there is a history of allowing the conduct at issue; (3) whether the act was a duty commonly done by this category of employees; (4) the extent to which the employee departed from established guidelines or methods of performance; and (5) whether the specific acts were foreseeable. See Bello v. United States, 93 F. App'x 288, 290 (2d Cir. 2004) (citing Riviello v. Waldron, 47 N.Y.2d 297, 303, 391 N.E.2d 1278, 1281 (1979)). "New York courts generally place greater emphasis on . . . whether the acts involved . . . could reasonably have been anticipated by [an] employer." Mingo v. United States, 274 F. Supp. 2d 336, 346 (E.D.N.Y. 2003) (citing Essig v. United States, 675 F. Supp. 84, 87 (E.D.N.Y. 1987)).

The record in this matter contains sufficient evidence to support a finding that Raines was acting outside of the scope of his employment when he sexually assaulted plaintiffs. While the assaults took place at the MDC and Raines's status as a correctional counselor enabled him to commit the assaults, plaintiffs have deduced no other evidence suggesting that he was acting within the scope of his employment. The record establishes that sexual relations with inmates are neither required of correctional counselors at the MDC, nor informally condoned. Nothing in the position description for correctional counselors requires or authorizes employees to engage in sexual contact with inmates, or any kind of physical contact the purpose of which is sexual gratification. At his deposition, Raines confirmed that no one at the BOP ever asked him to have sexual contact with inmates, or suggested that this was part of his job description as a correctional counselor. Quite the opposite, the BOP expressly prohibits sexual contact between employees and inmates. BOP policy documents—such as the BOP's Standard of Employee Conduct and its Sexually Abusive Behavior Prevention and Intervention Program Statement— prohibit BOP employees from becoming sexually involved with inmates, and indicated that

employees will be subject to a "zero tolerance" policy. There is no evidence in the record that employees regularly departed from these guidelines, or that the BOP indicated that the policies would not be enforced. Additionally, Raines repeatedly testified at his deposition that his actions were motivated solely by his own prurient interest in sexual gratification, not by any desire to serve or advance the BOP's interests. In short, there is no evidence that Raines was acting on behalf of the BOP, or to further its interests, when he sexually assaulted plaintiffs.

Moreover, because tortious sexual activity generally is entirely divorced from the nature of an employment position, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." Swarna, 622 F.3d at 144-45 (quoting Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)). Thus, for example, New York courts have "rejected *respondeat superior* claims that a church was liable for its priest's sexual assault of a child, that a hospital was liable for its attendant's sexual assault on a patient, that a school was liable for its volunteer-teacher's molestation of a student, and that a mall was liable for its security guard's rape of a girl in the mall security office." Id. at 144; see also Doe v. Alsaud, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) ("No decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault."); Adorno v. Corr. Servs. Corp., 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (private company operating prison not liable under the doctrine of *respondeat superior* for employee's sexual abuse of inmates).

The applicability of these principles is not altered merely because the BOP may have had notice of Raines's sexual misconduct. "When we talk of vicarious liability we are not looking for the employer's fault but rather for risks that may fairly be regarded as typical of or broadly

incidental to the enterprise he has undertaken." Cronin v. Hertz Corp., 818 F.2d 1064, 1068 (2d Cir. 1987) (internal quotation marks and citation omitted). Sexual abuse of inmates is plainly not typical of the BOP's enterprise. While plaintiffs' complaints to other BOP employees are relevant to the BOP's liability for negligence (as discussed below), they are not a consideration in determining whether the BOP is vicariously liable for Raines's actions. See Adorno, 312 F. Supp. 2d at 517.

In sum, based on the factual record before the Court, Raines's acts of sexual abuse and rape were not "within the scope of his office or employment." Accordingly, plaintiffs' claims for battery—counts five and six of the complaint—are dismissed.

B. Negligence Claims

Plaintiffs allege that the BOP was negligent in its screening, hiring, training, supervision, evaluation, and retention of Raines. Through the FTCA, the United States has waived its sovereign immunity from suits for the negligent or wrongful acts of its employees. However, the FTCA's limited waiver does not authorize claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception is meant to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 325 (1991) (internal quotation marks and citations omitted).

The exception applies "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded

in 'considerations of public policy' or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (quoting Gaubert, 499 U.S. at 322, and Berkovitz v. United States, 486 U.S. 531, 537 (1988)). On the other hand, certain acts, although discretionary, are not covered by the exception because they involve "negligence unrelated to any plausible policy objective." Coulthurst, 214 F.3d at 111. For instance, while the exception would apply to an injured inmate's claim that the government negligently designed the procedures and schedules applicable to the inspection of equipment in a prison, it would not apply to a claim that an official negligently carried out an inspection policy as a result of "laziness," "haste," or "inattentive[ness]." Id. at 107-10. Thus, an official's "lazy or careless failure to perform his or her discretionary duties" constitutes negligent conduct that "neither involve an element of judgment or choice within the meaning of [the exception] nor are grounded in considerations of governmental policy." Id. at 109-10; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006).

Issues of employee hiring, training, supervision, and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception. See, e.g., Saint-Guillen v. United States, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009); Li v. Aponte, No. 05-CV-6237 (NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008). However, "[i]t is not the case that . . . all claims for negligent hiring or supervision are barred by the discretionary function exception." Gibbons v. Fronton, 533 F. Supp. 2d 449, 455 (S.D.N.Y. 2008). "There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." Gaubert, 499 U.S. at 325 n.7. Thus, "for a claim of negligent hiring or supervision to be barred

by the discretionary function exception, the decision to hire or supervise the negligent employees must be 'grounded in considerations of public policy or susceptible to policy analysis.'" Gibbons, 533 F. Supp. 2d at 455 (quoting Coulthurst, 214 F.3d at 109).

While plaintiffs' briefing on this issue is not a model of clarity, they assert that BOP employees were careless or inattentive in failing to report Raines after plaintiffs told BOP employees that Raines was sexually assaulting them. Riascos-Hurtado testified at her deposition that she repeatedly told Officer Puzie about Raines's sexual assaults and rape, and that Office Puzie not only failed to act but also told her not to tell anyone. Sanchez-Loqui also testified that Counselor Neil witnessed Raines acting in a suggestive manner, and that she told Counselor Neil about the assaults; yet, he did nothing. There is no evidence that Officer Puzie or Counselor Neil reported these conversations to anyone.[3] This proffered failure of action is sufficient to insulate plaintiffs' claim from dismissal under Rule 12(b)(1). "Failure to act after notice of illegal action does not represent a choice based on plausible policy considerations." Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995); see also Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 398 (6th Cir. 2004) ("decisions by prison officials to ignore specific and immediate threats against inmates are less likely to be the type of decision that can be said to be grounded in the underlying policy of the BOP"); Knappick v. United States, 875 F.2d 318 (9th Cir. 1989) (the discretionary function exception did not bar a claim that the United States negligently hired and supervised an employee who raped an inmate); Hartman v. Holder, No. 10-CV-6107 (ENV), 2009 WL 792185, at *8 (E.D.N.Y. Mar. 23, 2009) (allegation that prison guard "was lazy or careless in failing to report the threats made against [an inmate] that plaintiff allegedly relayed to

---

[3] These employees have either denied the allegations or indicated that they do not recall plaintiffs making these reports. As the viability of plaintiffs' claim depends, in part, on whether they are telling the truth, this is not an issue appropriate for resolution by motion.

[the prison guard] prior to the assault" was "sufficient to insulate plaintiff's claim from dismissal").

Moreover, while it may be true, as the United States argues, that BOP managers have considerable judgment and choice in making personnel decisions, there are nonetheless mandatory regulations regarding the supervision and reporting of sexual abuse. Specifically, section 11 of the BOP Program Statement P5324.06 requires that "[s]taff must report and respond to allegations of sexually abusive behavior." To the extent BOP employees failed to adhere to their own regulations, that too is evidence that these were not discretionary acts performed by BOP employees. See Berkowitz, 486 U.S. at 536 (the discretionary function exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow"); Triestman, 470 F.3d at 475 (complaint adequately alleged a "negligent guard" theory of liability where plaintiff stated that injuries could have been prevented had defendant adhered to its own regulations). The government has not offered any explanation *particular to the facts here* as to how the decisions concerning supervision and retention of Raines involved policy considerations.

In contrast, plaintiffs' allegations of negligent screening, hiring, and training cannot survive the discretionary function inquiry. The BOP's choice between several potential employees involves "consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition." Saint-Guillen, 657 F. Supp. 2d at 387 (quoting Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1217 (D.C. Cir. 1997)). These multi-factored choices require a balancing of competing objectives, and are of the nature and quality that Congress intended to shield from tort liability. Plaintiffs have not deduced any evidence suggesting that

the BOP's hiring of Raines strayed from these normal considerations.[4]  Permitting FTCA claims involving negligent hiring based on the facts present here would require this court to engage in the type of judicial second-guessing that Congress intended to avoid.

Thus, while plaintiffs may proceed on a theory of negligent supervision and retention against the United States, their claims for negligent screening, hiring and training are dismissed as barred by the discretionary function exception to the FTCA.[5]

\* \* \*

For the reasons stated above, the government's motion is granted in part.  Plaintiffs' claims for battery and negligent screening, hiring, and training are dismissed.  This case will proceed on plaintiffs' negligent supervision and retention claims.  A pretrial conference is scheduled for July 9, 2015, at 11:00 a.m. to set a trial date and address any related matters.

SO ORDERED.

Dated: Brooklyn, New York
       June 5, 2015

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[4] Plaintiffs argue that there is evidence that the BOP knew or should have known about Raines's drinking problem, which existed before he was hired.  Maybe so, but plaintiffs have not offered any evidence suggesting that the BOP could have known about Raines's proclivity for sexual abuse based on his alcohol abuse.

[5] The Court construed plaintiffs' arguments in Part II of their brief as urging against the dismissal of the negligence claims pled in the complaint, not asserting a new failure-to-protect claim.  To the extent plaintiffs were attempting to assert a new claim through their brief, that claim would be barred.